Law Office of William Carlon
437 Post Street, Napa, CA 94559
william@carlonlaw.com
(530) 514-4115

July 7, 2025

**VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED**

Queen Uchekwe, Environmental Engineer
Weber Metals, Inc.
16706 Garfield Ave
Paramount, CA 90723

Douglas McIntyre, CEO
Weber Metals, Inc.
509 8th Street
Huntington Beach, CA 92648

Paul Russell Dennis, CFO/Agent for Service of Process
Weber Metals, Inc.
8252 Tuscany Avenue
Playa Del Rey, CA 90293

Justin Owen, Secretary
Weber Metals, Inc.
635 E Grand View Ave
Sierra Madre, CA 91024

**Re:    NOTICE OF VIOLATIONS AND INTENT TO FILE SUIT UNDER THE
FEDERAL WATER POLLUTION CONTROL ACT ("CLEAN WATER ACT")
(33 U.S.C. §§ 1251 *et seq*.)**

Dear Douglas McIntyre, Queen Uchekwe, Paul Russell Dennis, and Justin Owens:

This firm represents Los Angeles Waterkeeper ("LA Waterkeeper") regarding violations of the Clean Water Act (also referred to herein as the "Act") occurring at Weber Metals Inc.'s facility located at 16706 Garfield Ave, in Paramount, California 90723 ("Facility").  This letter is being sent to you individually, as the responsible owners and/or operators of the enterprise, and as the registered agent for these entities.  Unless otherwise noted, Douglas McIntyre, Queen Uchekwe, Paul Russell Dennis, Justin Owen, and Weber Metals, Inc. shall hereinafter be collectively referred to as "Weber Metals."  The purpose of this letter is to provide Weber Metals with notice of the violations of the Industrial General Permit occurring at the Facility, including, but not limited to, noncompliant discharges of polluted storm water associated with industrial activities from the Facility into local surface waters.

Weber Metals is in ongoing violation of the substantive and procedural requirements of the Clean Water Act, 33 U.S.C. § 1251 *et seq*., and National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001, State Water Resources Control Board Water Quality Order No. 14-57-DWQ as amended by Order No. 2015-0122-DWQ & Order No. 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load ("TMDL") Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use (collectively "General

Notice of Violation and Intent to File Suit
July 7, 2025
Page 2

Permit" or "Permit").[1]

Pursuant to Section 309(d) of the Act (33 U.S.C. § 1319(d)) and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4, each separate violation of the Act subjects Weber Metals to a penalty for all violations occurring during the period commencing five years prior to the date of the Notice Letter. These provisions of law authorize civil penalties of up to $68,445 per day per violation for all Clean Water Act violations occurring after November 2, 2015, where penalties are assessed on or after January 8, 2025.

In addition to civil penalties, LA Waterkeeper will seek injunctive relief preventing further violations of the Act pursuant to Sections 505(a) and (d) (33 U.S.C. §1365(a) and (d)) and such other relief as permitted by law. Lastly, Section 505(d) of the Act (33 U.S.C. § 1365(d)) permits prevailing parties to recover costs and fees, including attorneys' fees.

The Clean Water Act requires that sixty (60) days prior to the initiation of a citizen-enforcement action under Section 505(a) of the Act (33 U.S.C. § 1365(a)), a citizen enforcer must give notice of its intent to file suit. Notice must be given to the alleged violator, the U.S. Environmental Protection Agency, and the Chief Administrative Officer of the water pollution control agency for the State in which the violations occur. *See* 40 C.F.R. § 135.2. As required by the Act, this letter provides statutory notice of the violations that have occurred, and continue to occur, at the Facility. 40 C.F.R. § 135.3(a). At the expiration of sixty (60) days from the date of this letter, LA Waterkeeper intends to file suit under Section 505(a) of the Act in federal court against Weber Metals for violations of the Clean Water Act and the Permit.

## I.      Background.

### A.      Los Angeles Waterkeeper

LA Waterkeeper is a 501(c)(3) public benefit corporation organized under the laws of California with its main office located in Los Angeles, California. LA Waterkeeper was founded in 1993, and its members live, work, and recreate in and around the Los Angeles area. LA Waterkeeper is dedicated to the preservation, protection, and defense of the inland and coastal waters of Los Angeles County including without limitation the Los Angeles River and its tributaries. To further its mission, LA Waterkeeper actively seeks federal and state implementation of the Clean Water Act. Where necessary, LA Waterkeeper directly initiates enforcement actions on behalf of itself and its members.

Members of LA Waterkeeper own homes and reside in Los Angeles County, and use and enjoy the Los Angeles River, and its tributaries, and the bordering parks, pathways, golf courses and athletic fields. As explained in detail below, Weber Metals discharges pollutants into the

---

[1] Weber Metals most recently submitted a Notice of Intent ("NOI") to comply with the General Permit for the Facility on or about June 12, 2018. The Facility is assigned the Waste Discharge Identification ("WDID") Number 4 19I000406.

Notice of Violation and Intent to File Suit
July 7, 2025
Page 3

Los Angeles River in violation of the Clean Water Act and the General Permit. LA Waterkeeper members also use and enjoy the Los Angeles River, including, without limitation, to bike, boat, kayak, bird watch, ride horses, view wildlife, hike, walk, and run. Additionally, LA Waterkeeper members use the Los Angeles River to engage in scientific study through pollution and habitat monitoring and restoration activities. The unlawful discharge of pollutants from the Facility into the Los Angeles River impairs LA Waterkeeper members' use and enjoyment of these waters. The unlawful discharge of pollutants from the Facility requires LA Waterkeeper to expend its limited resources to study and combat pollution from the Facility. Thus, the interests of LA Waterkeeper and its members have been, are being, and will continue to be adversely affected by Weber Metals's failure to comply with the Clean Water Act and the General Permit.

### B. The Clean Water Act.

Congress enacted the CWA in 1972 in order to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251. The Act prohibits the discharge of pollutants into United States waters except as authorized by the statute. 33 U.S.C. § 1311; *San Francisco Bay Keeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1156 (9th Cir. 2002). The Act is administered largely through the NPDES permit program. 33 U.S.C. § 1342. In 1987, the Act was amended to establish a framework for regulating storm water discharges through the NPDES system. Water Quality Act of 1987, Pub. L. 100-4, § 405, 101 Stat. 7, 69 (1987) (codified at 33 U.S.C. § 1342(p)); *see also Envtl. Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 840-41 (9th Cir. 2003) (describing the problem of storm water runoff and summarizing the Clean Water Act's permitting scheme). The discharge of pollutants not specifically allowed by a NPDES permit is illegal. *Ecological Rights Found. v. Pacific Lumber Co.*, 230 F.3d 1141, 1145 (9th Cir. 2000).

Much of the responsibility for administering the NPDES permitting system has been delegated to the states. *See* 33 U.S.C. § 1342(b); *see also* Cal. Water Code § 13370 (expressing California's intent to implement its own NPDES permit program). The CWA authorizes states with approved NPDES permit programs to regulate industrial storm water discharges through individual permits issued to dischargers and/or through the issuance of a single, statewide general permit applicable to all industrial storm water dischargers. 33 U.S.C. § 1342(b). Pursuant to Section 402 of the Act, the Administrator of the EPA has authorized California's State Board to issue individual and general NPDES permits in California. 33 U.S.C. § 1342.

### C. California's General Permit for Storm Water Discharges Associated with Industrial Activities

Facilities discharging, or having the potential to discharge, storm water associated with industrial activities that have not obtained an individual NPDES permit must apply for coverage under the General Permit by filing a Notice of Intent to Comply ("NOI"). General Permit, Standard Condition XXI.A. These facilities must file their NOIs before the initiation of industrial operations. *Id.*

Facilities must strictly comply with all of the terms and conditions of the General Permit. A violation of the General Permit is a violation of the CWA. The General Permit contains three primary and interrelated categories of requirements: (1) discharge prohibitions, receiving water limitations and effluent limitations; (2) Storm Water Pollution Prevention Plan ("SWPPP") requirements; and (3) self-monitoring and reporting requirements.

Notice of Violation and Intent to File Suit
July 7, 2025
Page 4

Beginning under the General Permit Facilities must submit Exceedance Response Action Plans ("ERA Report") to the State Board outlining effective plans to reduce pollutants if a Facility reports a pollutant above the Numeric Action Level ("NAL"). An annual NAL exceedance occurs when the average of all the analytical results for a parameter from samples taken within a reporting year exceeds the annual NAL value for that parameter. General Permit Section XII.A. An instantaneous maximum NAL exceedance occurs when two (2) or more analytical results from samples taken for any single parameter within a reporting year exceed the instantaneous maximum NAL value or are outside of the instantaneous maximum NAL range for pH. *Id.*

The General Permit contains requirements that are specific to the Total Maximum Daily Load ("TMDL") for watersheds and water bodies with U.S. EPA-approved and U.S. EPA-established TMDLs for Dischargers covered by the General Permit. TMDLs relate to the maximum amount of a pollutant that a water body can receive and still attain water quality standards. Dischargers located within a watershed for which a TMDL has been approved by U.S. EPA shall comply with any applicable TMDL-specific permit requirements that are set forth in Attachment E to the General Permit. General Permit, V.C. Dischargers shall compare all sampling and analytical results from each distinct sample to the corresponding instantaneous Numeric Effluent Limitations ("NEL") values in the TMDL Compliance Table E-2. *Id.*, Attachment C at 5. An exceedance of an NEL occurs when two or more analytical results from samples taken for any single parameter within a reporting year exceeds the instantaneous maximum NEL value. *Id.* An exceedance of an NEL is a violation of the General Permit. *Id.*

### D.   Weber Metals's Paramount Facility

Weber Metals's Facility is located at 16706 Garfield Ave in Paramount, California 90723. According to its SWPPP, last updated December 22, 2022, the Facility's primary industrial purpose is forging aluminum and titanium parts for aerospace and defense applications. The SWPPP also states that the Facility's business hours are Monday through Thursday from 7:30 a.m. to 4:30 p.m.[2]

Information available to LA Waterkeeper indicates that Weber Metals conducts industrial activities both indoors and outdoors at the approximately 23-acre Facility. Industrial activities at the Facility include, but are not limited to: metal forging and forging support activities (e.g., etching, heat-treating, sawing, coating, and repair of aluminum and titanium parts); titanium and aluminum dust collection from repair operations; chemical, oil, and lubricant storage; oil reclamation; industrial wastewater handling; vehicle, equipment, and facility maintenance; waste, scrap, and recyclable material storage; fuel (diesel and propane) storage; equipment storage; outdoor materials storage; shipping and receiving; and, operation of equipment in support of these activities.

Under the General Permit, Weber Metals is required to analyze its samples of storm water for total suspended solids, oil and grease, and pH. Facilities must also sample and analyze for additional parameters identified on a facility-specific basis for parameters identified in a

---

[2] The 2022 SWPPP also states that the Facility operates Monday through Thursday from 3:00 a.m. to 12:00 a.m.

Notice of Violation and Intent to File Suit
July 7, 2025
Page 5

pollutant source assessment, for parameters related to receiving water impairments, or as required by the Regional Board.  General Permit, Section XI.B.6.  According to the Facility's NOI, Weber Metals operates under Standard Industrial Classification ("SIC") Code 3463 ("Nonferrous Forgings"). Facilities operating under SIC Code 3463 must also analyze storm water samples for zinc, nitrate plus nitrite nitrogen, iron, and aluminum. General Permit, Section XI.B.6.d, Table 1. Pursuant to the Clean Water Act Section 303(d) list of impaired waterbodies, The Los Angeles River Reach 2 (Carson to Figueroa Street) is listed for the following water quality impairments: oil and grease, zinc, ammonia, copper, indicator bacteria, lead, nutrients (algae), and trash. The Los Angeles River Reach 1 (Estuary to Carson Street) is listed for the following water quality impairments: profenofos, iron, oil and grease, toxicity, pyrethroids, fipronil, imidacloprid, bifenthrin, cypermethrin, cyfluthrin, deltamethrin, permethrin, aluminum, ammonia, copper, cyanide, indicator bacteria, lead, nutrients (algae), pH, trash, and zinc. The Los Angeles River Estuary is listed for the following water quality impairments: copper, dissolved oxygen, zinc, indicator bacteria, chlordane, DDT, PCBs, toxicity, and trash.  San Pedro Bay is listed for copper, DDE, chlordane, PCBs, Total DDT, and toxicity.  The following impairments exist within the HUC10 watershed: ammonia, cyanide, diazinon, dissolved oxygen, *E. coli* and enterococcus, copper, dissolved copper, zinc, lead, cadmium, nitrates and nitrites, oil and pH.  The SWPPP[3] states that of those listed impairments, zinc, oil, nitrate, nitrite, and pH are associated with the industrial activities at the Facility.

According to its SWPPP, last updated December 22, 2022, Weber Metals collects storm water associated with industrial activities at the Facility and discharges to the City of Paramount and Los Angeles County Flood Control District ("LACFCD") municipal separate storm sewer systems ("MS4") which discharge into the Los Angeles River, Reach 2.

The SWPPP suggests that the Facility is divided into two distinct drainage areas: the Paramount Drainage Area (approximately 9.2 acres) and the Long Beach Drainage Area (approximately 13.8 acres). Each drainage area contains numerous industrial operations and discharges stormwater through separate stormwater conveyance and treatment systems into the MS4.

The Paramount Drainage Area encompasses the northern portion of the Facility and includes a mix of paved and pervious surfaces. Industrial activities in this area include metal forging and related operations (e.g., etching, sawing, machining, and repairs), dust collection, oil and lubricant storage and reclamation, industrial wastewater handling, vehicle and forklift maintenance, fuel storage, and outdoor equipment and materials storage. Forging operations occur in Buildings A, A1, G, H, J, P, V, and portions of Buildings C, E, F, F1, and L1. Stormwater from this area drains via sheet flow to catch basins connected to an underground conveyance system, which routes flow to the Up-Flo Filter treatment system (UFF 1) prior to

---

[3] Since the 2022 SWPPP was created, the 303(d) list has been updated to include aluminum and iron as impairments for Reach 1 of the Los Angeles River. Iron and aluminum are both associated with industrial activities at the Facility.

Notice of Violation and Intent to File Suit
July 7, 2025
Page 6

discharge into a 24-inch City of Paramount storm drain. This storm drain discharges into the LACFCD 54-inch storm drain beneath Garfield Avenue.

The Long Beach Drainage Area comprises the southern portion of the Facility and is predominantly paved. This area supports metal forging and support activities (including sawing, machining, quenching, heat-treating, and coating), dust collection, degreasing and washing of vehicles and equipment, storage of various wastes and recyclable materials, fuel storage, shipping and receiving, and outdoor storage of materials and equipment. Forging activities take place in Buildings B, D, O, M, and parts of Buildings C, E, F, F1, L1, and W. Stormwater from this area is directed to one of three Up-Flo Filter systems (UFF 2, UFF 3, and UFF 4) via catch basins and underground conveyances, and is ultimately discharged off-site to the LACFCD 57-inch stormwater conveyance system located south and west of the Facility beneath Cherry Avenue.

Numerous materials with the potential to contact stormwater—including oils, lubricants, metal parts, scrap, and other industrial byproducts—are stored outdoors in both drainage areas, increasing the risk of pollutant discharges during storm events.

The areas of industrial activities are sources of pollutants at the Facility.  From these drainage areas, the Facility discharges to municipal storm drains that discharge to the Los Angeles River, and ultimately to the Pacific Ocean ("Impacted Waters").  The Impacted Waters are waters of the United States within the meaning of the Clean Water Act.

**II.     Weber Metals's Violations of the Act and Permit.**

On July 1, 2020, the amendment to the General Permit by Order No. 2018-0028-DWQ became enforceable and updated pollutant-discharge standards including Total TMDL Implementation Requirements and Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use.  General Permit Attachment E.  Any exceedance of a Numeric Effluent Limitation ("NEL") following July 1, 2020 is a per se violation of the General Permit and Clean Water Act.  For this Facility, the applicable NELs include copper (0.06749 mg/L), zinc (0.159 mg/L), nitrate plus nitrite nitrogen (8.0 mg/L), nitrate nitrogen (8.0 mg/L), and nitrite nitrogen (1.0 mg/L).  In recent reporting years, and also following the implementation of the NEL for the Los Angeles River, Weber Metals had numerous exceedances, and LA Waterkeeper alleges that Weber Metals will continue to exceed the NEL in the future.

Based on its review of available public documents, LA Waterkeeper is informed and believes that Weber Metals, through its operation of the Facility, is in ongoing violation of both the substantive and procedural requirements of the CWA and the General Permit.  These violations are ongoing and continuous.  Consistent with the five-year statute of limitations applicable to citizen enforcement actions brought pursuant to the federal Clean Water Act, Weber Metals is subject to penalties for violations of the Act since July 7, 2020.

Notice of Violation and Intent to File Suit
July 7, 2025
Page 7

      **A.**      **Weber Metals Discharges Storm Water Containing Pollutants in Violation of the General Permit's Discharge Prohibitions, Receiving Water Limitations and Effluent Limitations.**

Weber Metals's storm water sampling results provide conclusive evidence of Weber Metals's failure to comply with the General Permit's discharge prohibitions, receiving water limitations and effluent limitations at its Facility.  Self-monitoring reports under the Permit are deemed "conclusive evidence of an exceedance of a permit limitation."  *Sierra Club v. Union Oil*, 813 F.2d 1480, 1493 (9th Cir. 1987).

      **1.**      **Applicable Water Quality Standards.**

The General Permit requires that storm water discharges and authorized non-storm water discharges shall not cause or threaten to cause pollution, contamination, or nuisance.  General Permit, Discharge Prohibition III.C.  The General Permit also prohibits discharges that violate any discharge prohibition contained in the applicable Regional Water Board's Basin Plan or statewide water quality control plans and policies.  General Permit, Discharge Prohibition III.D.  Furthermore, storm water discharges and authorized non-storm water discharges shall not adversely impact human health or the environment, and shall not cause or contribute to a violation of any water quality standards in any affected receiving water.  General Permit, Receiving Water Limitations VI.A, VI.B.

Dischargers are also required to prepare and submit documentation to the Regional Board upon determination that storm water discharges are in violation of the General Permit's Receiving Water Limitations.  General Permit, Special Condition XX.B.  The documentation must describe changes the discharger will make to its current storm water best management practices ("BMPs") in order to prevent or reduce any pollutant in its storm water discharges that is causing or contributing to an exceedance of water quality standards.  *Id*.

The California Toxics Rule ("CTR") is an applicable water quality standard under the Permit, the violation of which is a violation of Permit conditions.  *Cal. Sportfishing Prot. Alliance v. Chico Scrap Metal, Inc.*, 2015 U.S. Dist. LEXIS 108314, *21 (E.D. Cal. 2015).  The CTR establishes numeric receiving water limits for toxics pollutants in California surface waters.  40 C.F.R. § 131.38.  The CTR establishes a numeric limit for at least some of the pollutants discharged by Weber Metals: zinc – 0.12 mg/L (maximum concentration), copper – 0.013 mg/L (maximum concentration), nickel – 0.470 mg/L (maximum concentration).

The Water Quality Control Plan for the Los Angeles Region ("Basin Plan") sets forth water quality standards and prohibitions applicable to Weber Metals's storm water discharges from its Facility.  The Basin Plan includes a narrative toxicity standard which states that "(a)ll waters shall be maintained free of toxic substances in concentrations that produce detrimental physiological responses in human, plant, animal, or aquatic life."  The Basin Plan's Water Quality Standards require narrower pH range of 6.5 – 8.5 pH units for inland surface waters such as the Los Angeles River.

      **2.**      **Applicable Effluent Limitations.**

Notice of Violation and Intent to File Suit
July 7, 2025
Page 8

Dischargers are required to reduce or prevent pollutants in their storm water discharges through implementation of best available technology economically achievable ("BAT") for toxic and nonconventional pollutants and best conventional pollutant control technology ("BCT") for conventional pollutants. General Permit, Effluent Limitation V.A. Conventional pollutants include total suspended solids, oil & grease, pH, biochemical oxygen demand and fecal coliform. 40 C.F.R. § 401.16. All other pollutants are either toxic or nonconventional. 40 C.F.R. §§ 401.15-16.

Under the General Permit, benchmark levels established by the EPA ("EPA benchmarks") and Numeric Action Levels ("NAL") serve as guidelines for determining whether a facility discharging industrial storm water has implemented the requisite BAT and BCT. *Santa Monica Baykeeper v. Kramer Metals,* 619 F. Supp. 2d 914, 920, 923 (C.D. Cal 2009); General Permit, Exceedance Response Action XII.A.

The following EPA benchmarks have been established for pollutants discharged by Weber Metals: total suspended solids – 100 mg/L; pH – 6.0-9.0 s.u.; zinc – 0.12 mg/L; aluminum – 1.1 mg/L; copper – 0.00519 mg/L; nickel – 0.470 mg/L; and, nitrate plus nitrite nitrogen – 0.68 mg/L. The following Annual NALs have been established for pollutants discharged by Weber Metals: total suspended solids – 100 mg/L; oil & grease – 15.0 mg/L; zinc – 0.26 mg/L; aluminum – 0.75 mg/L; copper – 0.0332 mg/L; iron – 1.0 mg/L; nickel – 1.02 mg/L; and nitrate plus nitrite nitrogen – 0.68 mg/L. Additionally, the following instantaneous NALs have been established for pollutants discharged by Weber Metals: pH – 6.0-9.0 s.u.; total suspended solids – 400 mg/L; and oil & grease – 25.0 mg/L.

The General Permit also requires a permittee whose discharges violate the General Permit's Receiving Water Limitations or water quality standards, such as, NALs, TMDLs, TNALs, and NELs to implement additional BMPs or other control measures that are tailored to that facility in order to attain compliance with the receiving water limitation. A discharger that is notified by a Regional Board or who determines the discharge is causing or contributing to an exceedance of a water quality standard must comply with the Water Quality Based Corrective Action in Section XX.B of the General Permit and report to the Regional Board regarding the same. General Permit, Section XX.B. As noted above, the NELs established numeric limits for some of the pollutants discharged by Weber Metals: copper (0.06749 mg/L), zinc (0.159 mg/L), nitrate plus nitrite nitrogen (8.0 mg/L), nitrate nitrogen (8.0 mg/L), and nitrite nitrogen (1.0 mg/L).

### 3.    Weber Metals's Storm Water Sample Results

As detailed above, Weber Metals's SWPPP describes four discharge points/sampling locations (UFF 1-4). Storm water discharged from the Facility flows into the MS4 to the Impacted Waters.

Except as provided in Section XI.C.4 of the General Permit, samples shall be collected from each drainage area at all discharge locations. The samples must be: a) representative of storm water associated with industrial activities and any commingled authorized non-storm water

Notice of Violation and Intent to File Suit
July 7, 2025
Page 9

discharges; or, b) associated with the discharge of contained storm water.  At this time, LA Waterkeeper is unable to determine if storm water from the four sampling points at the Facility is representative of industrial storm water at the Facility.

The following discharges of pollutants from the Facility have violated the discharge prohibitions, receiving water limitations and effluent limitations of the Permit:

### a. Discharge of Storm Water Containing Zinc at Concentrations in Excess of Applicable Water Quality Standards

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | Numeric Effluent Limitation (mg/L) | CTR & EPA Benchmark (mg/L) | NAL (mg/L) |
|---|---|---|---|---|---|---|
| 3/3/2021 | UFF 2 (LB) | Zn | 0.254 | 0.159 | 0.12 | 0.26 |
| 3/3/2021 | UFF 4 | Zn | 0.235 | 0.159 | 0.12 | 0.26 |
| 3/3/2021 | UFF 3 | Zn | 0.189 | 0.159 | 0.12 | 0.26 |
| 3/3/2021 | UFF 1 (South) | Zn | 0.145 | 0.159 | 0.12 | 0.26 |
| 3/10/2021 | UFF 2 (LB) | Zn | 0.289 | 0.159 | 0.12 | 0.26 |
| 3/10/2021 | UFF 3 | Zn | 0.193 | 0.159 | 0.12 | 0.26 |
| 3/10/2021 | UFF 4 | Zn | 0.148 | 0.159 | 0.12 | 0.26 |
| 12/14/2021 | UFF 2 (LB) | Zn | 0.68 | 0.159 | 0.12 | 0.26 |
| 12/14/2021 | UFF 3 | Zn | 0.534 | 0.159 | 0.12 | 0.26 |
| 12/14/2021 | UFF 4 | Zn | 0.421 | 0.159 | 0.12 | 0.26 |
| 12/23/2021 | UFF 3 | Zn | 0.414 | 0.159 | 0.12 | 0.26 |
| 12/23/2021 | UFF 2 (LB) | Zn | 0.381 | 0.159 | 0.12 | 0.26 |
| 12/23/2021 | UFF 1 (South) | Zn | 0.365 | 0.159 | 0.12 | 0.26 |
| 12/23/2021 | UFF 4 | Zn | 0.197 | 0.159 | 0.12 | 0.26 |
| 3/28/2022 | UFF 3 | Zn | 0.532 | 0.159 | 0.12 | 0.26 |
| 3/28/2022 | UFF 2 (LB) | Zn | 0.475 | 0.159 | 0.12 | 0.26 |
| 3/28/2022 | UFF 4 | Zn | 0.3 | 0.159 | 0.12 | 0.26 |
| 1/5/2023 | UFF 2 (LB) | Zn | 0.155 | 0.159 | 0.12 | 0.26 |
| 1/10/2023 | UFF 2 (LB) | Zn | 0.191 | 0.159 | 0.12 | 0.26 |
| 2/1/2024 | UFF 4 | Zn | 0.121 | 0.159 | 0.12 | 0.26 |
| 2/19/2024 | UFF 4 | Zn | 0.177 | 0.159 | 0.12 | 0.26 |

Notice of Violation and Intent to File Suit
July 7, 2025
Page 10

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | Numeric Effluent Limitation (mg/L) | CTR & EPA Benchmark (mg/L) | NAL (mg/L) |
|---|---|---|---|---|---|---|
| 2/19/2024 | UFF 2 (LB) | Zn | 0.17 | 0.159 | 0.12 | 0.26 |
| 2/13/2025 | UFF 2 (LB) | Zn | 0.384 | 0.159 | 0.12 | 0.26 |
| 2/13/2025 | UFF 3 | Zn | 0.248 | 0.159 | 0.12 | 0.26 |
| 2/13/2025 | UFF 4 | Zn | 0.226 | 0.159 | 0.12 | 0.26 |
| 3/13/2025 | UFF 1 | Zn | 0.158 | 0.159 | 0.12 | 0.26 |
| 3/13/2025 | UFF 2 | Zn | 0.292 | 0.159 | 0.12 | 0.26 |
| 3/13/2025 | UFF 3 | Zn | 0.281 | 0.159 | 0.12 | 0.26 |
| 3/13/2025 | UFF 4 | Zn | 0.149 | 0.159 | 0.12 | 0.26 |

**b. Discharge of Storm Water Containing Aluminum at Concentrations in Excess of Applicable Water Quality Standards**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | EPA Benchmark (mg/L) | NAL (mg/L) |
|---|---|---|---|---|---|
| 12/14/2021 | UFF 4 | Al | 1.49 | 1.1 | 0.75 |
| 12/23/2021 | UFF 3 | Al | 1.35 | 1.1 | 0.75 |
| 12/23/2021 | UFF 2 (LB) | Al | 0.9 | 1.1 | 0.75 |
| 3/28/2022 | UFF 3 | Al | 0.814 | 1.1 | 0.75 |
| 3/28/2022 | UFF 4 | Al | 0.761 | 1.1 | 0.75 |
| 2/1/2024 | UFF 4 | Al | 0.873 | 1.1 | 0.75 |
| 2/19/2024 | UFF 4 | Al | 1.44 | 1.1 | 0.75 |
| 2/13/2025 | UFF 4 | Al | 1.31 | 1.1 | 0.75 |

**c. Discharge of Storm Water Containing Copper Violating Applicable Water Quality Standards**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | NAL (mg/L) | NEL (mg/L) | CTR (mg/L) |
|---|---|---|---|---|---|---|
| 3/3/2021 | UFF 1 (South) | Cu | 0.0567 | 0.0332 | .06749 | 0.013 |
| 3/3/2021 | UFF 4 | Cu | 0.0231 | 0.0332 | .06749 | 0.013 |
| 3/3/2021 | UFF 3 | Cu | 0.0159 | 0.0332 | .06749 | 0.013 |
| 3/10/2021 | UFF 1 (South) | Cu | 0.015 | 0.0332 | .06749 | 0.013 |
| 12/14/2021 | UFF 4 | Cu | 0.0375 | 0.0332 | .06749 | 0.013 |
| 12/14/2021 | UFF 3 | Cu | 0.0253 | 0.0332 | .06749 | 0.013 |
| 12/14/2021 | UFF 2 (LB) | Cu | 0.0203 | 0.0332 | .06749 | 0.013 |
| 12/23/2021 | UFF 3 | Cu | 0.0189 | 0.0332 | .06749 | 0.013 |
| 3/28/2022 | UFF 3 | Cu | 0.0275 | 0.0332 | .06749 | 0.013 |

Notice of Violation and Intent to File Suit
July 7, 2025
Page 11

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | NAL (mg/L) | NEL (mg/L) | CTR (mg/L) |
|---|---|---|---|---|---|---|
| 3/28/2022 | UFF 4 | Cu | 0.023 | 0.0332 | .06749 | 0.013 |
| 3/28/2022 | UFF 2 (LB) | Cu | 0.0133 | 0.0332 | .06749 | 0.013 |

**d. Discharge of Storm Water Containing Nitrate Plus Nitrite Nitrogen at Concentrations in Excess of Applicable Water Quality Standards**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | Numeric Effluent Limitation (mg/L) | EPA Benchmark/NAL (mg/L) |
|---|---|---|---|---|---|
| 3/3/2021 | UFF 4 | N+N | 2.82 | 8.0 | 0.68 |
| 3/3/2021 | UFF 2 (LB) | N+N | 2.64 | 8.0 | 0.68 |
| 3/3/2021 | UFF 1 (South) | N+N | 0.921 | 8.0 | 0.68 |
| 3/3/2021 | UFF 3 | N+N | 0.689 | 8.0 | 0.68 |
| 3/10/2021 | UFF 2 (LB) | N+N | 1.57 | 8.0 | 0.68 |
| 12/14/2021 | UFF 3 | N+N | 2.93 | 8.0 | 0.68 |
| 12/14/2021 | UFF 2 (LB) | N+N | 2.71 | 8.0 | 0.68 |
| 12/14/2021 | UFF 4 | N+N | 0.771 | 8.0 | 0.68 |
| 12/23/2021 | UFF 2 (LB) | N+N | 5.31 | 8.0 | 0.68 |
| 12/23/2021 | UFF 1 (South) | N+N | 4.72 | 8.0 | 0.68 |
| 12/23/2021 | UFF 3 | N+N | 2.11 | 8.0 | 0.68 |
| 12/23/2021 | UFF 4 | N+N | 1.81 | 8.0 | 0.68 |
| 3/28/2022 | UFF 2 (LB) | N+N | 1.43 | 8.0 | 0.68 |
| 3/28/2022 | UFF 3 | N+N | 1.11 | 8.0 | 0.68 |
| 1/5/2023 | UFF 2 (LB) | N+N | 1.1 | 8.0 | 0.68 |
| 1/10/2023 | UFF 2 (LB) | N+N | 1.33 | 8.0 | 0.68 |
| 2/19/2024 | UFF 2 (LB) | N+N | 1.31 | 8.0 | 0.68 |
| 2/13/2025 | UFF 2 (LB) | N+N | 1.21 | 8.0 | 0.68 |
| 2/13/2025 | UFF 3 | N+N | 0.75 | 8.0 | 0.68 |
| 3/13/2025 | UFF 2 | N+N | 0.77 | 8.0 | 0.68 |

**e. Discharge of Storm Water Containing Oil & Grease at Concentrations in Excess of Applicable Water Quality Standards**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | Annual NAL (mg/L) | Instantaneous NAL (mg/L) |
|---|---|---|---|---|---|
| 12/14/2021 | UFF 3 | O&G | 39.3 | 15 | 25 |

Notice of Violation and Intent to File Suit
July 7, 2025
Page 12

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | Annual NAL (mg/L) | Instantaneous NAL (mg/L) |
|---|---|---|---|---|---|
| 12/14/2021 | UFF 2 (LB) | O&G | 24.6 | 15 | 25 |
| 3/28/2022 | UFF 3 | O&G | 61.8 | 15 | 25 |
| 3/28/2022 | UFF 2 (LB) | O&G | 23.8 | 15 | 25 |
| 2/13/2025 | UFF 2 (LB) | O&G | 27 | 15 | 25 |
| 2/13/2025 | UFF 3 | O&G | 15.9 | 15 | 25 |
| 3/13/2025 | UFF 2 | O&G | 19.7 | 15 | 25 |
| 3/13/2025 | UFF 3 | O&G | 23.0 | 15 | 25 |

**f. Discharge of Storm Water Containing Total Suspended Solids at Concentrations in Excess of Applicable Water Quality Standards**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | Annual NAL (mg/L) |
|---|---|---|---|---|
| 3/28/2022 | UFF 3 | TSS | 130 | 100 |

**g. Discharge of Storm Water Containing Iron at Concentrations in Excess of Applicable Water Quality Standards**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | Annual NAL (mg/L) |
|---|---|---|---|---|
| 3/10/2021 | UFF 2 (LB) | Fe | 1.16 | 1.0 |
| 12/14/2021 | UFF 4 | Fe | 1.14 | 1.0 |
| 12/23/2021 | UFF 1 (South) | Fe | 3.22 | 1.0 |
| 3/28/2022 | UFF 3 | Fe | 1.01 | 1.0 |
| 2/13/2025 | UFF 4 | Fe | 1.15 | 1.0 |

**h. Weber Metals's Sample Results Are Evidence of Violations of the General Permit**

Weber Metals's sample results demonstrate violations of the Permit's discharge prohibitions, receiving water limitations and effluent limitations set forth above. LA Waterkeeper is informed and believes that Weber Metals has known that its storm water contains pollutants at levels exceeding applicable water quality standards since at least July 7, 2020, including at least twenty-nine exceedances of water quality standards for zinc (twenty-three of which are above the NEL); eight exceedances of water quality standards for aluminum; eleven exceedances of water quality standards for copper; twenty exceedances of water quality standards for nitrate plus nitrite nitrogen; eight exceedances of water quality standards for oil and grease; one exceedance of water quality standards for total suspended solids; and, five exceedances of water quality standards for iron.

Notice of Violation and Intent to File Suit
July 7, 2025
Page 13

LA Waterkeeper alleges that such violations occur each time storm water discharges from the Facility. **Attachment A** hereto, sets forth the specific rain dates on which LA Waterkeeper alleges that Weber Metals has discharged storm water containing impermissible levels of zinc, aluminum, copper, nitrate plus nitrite nitrogen, oil and grease, total suspended solids, and iron in violation of the General Permit. General Permit, Discharge Prohibitions III.C and III.D; Receiving Water Limitations VI.A, VI.B; Effluent Limitations V.A and V.C.

### 4. Weber Metals Has Failed to Implement BAT and BCT

Dischargers must implement BMPs that fulfill the BAT/BCT requirements of the CWA and the General Permit to reduce or prevent discharges of pollutants in their storm water discharges. General Permit, Effluent Limitation V.A. To meet the BAT/BCT standard, dischargers must implement minimum BMPs and any advanced BMPs set forth in the General Permit's SWPPP Requirements provisions where necessary to reduce or prevent pollutants in discharges. *See* General Permit, Sections V, X.H.1-2.

Weber Metals has failed to implement and maintain the minimum BMPs required by the General Permit as evidenced by the exceedances identified above. Specifically, Weber Metals has failed to comply with the following: good housekeeping requirements, preventive maintenance requirements; spill and leak prevention and response requirements; material handling and waste management requirements; erosion and sediment controls; employee training and quality assurance; and record keeping. Permit, Section X.H.1(a-g).

Weber Metals has further failed to implement advanced BMPs necessary to reduce or prevent discharges of pollutants in its storm water sufficient to meet the BAT/BCT standards, including: exposure minimization BMPs; containment and discharge reduction BMPs; treatment control BMPs; or other advanced BMPs necessary to comply with the General Permit's effluent limitations. General Permit, Sections X.H.2. Weber Metals's own storm water sampling results are further evidence of its failure to implement BMPs that meet the BAT/BCT standards. In reporting years identified below, Weber Metals has exceeded the annual NAL for aluminum, iron, nitrate plus nitrite nitrogen, oil and grease, and zinc. LA Waterkeeper alleges that if Accurate Steel had collected the required number of samples in each reporting period, it would have exceeded the annual NAL for additional pollutants, and in additional years.

| Reporting Year | Pollutant | Average Pollutant Concentration | Numeric Action Level (Annual) |
|---|---|---|---|
| 2020-2021 | N+N | 1.34 mg/L | 0.68 mg/L |
| 2021-2022 | N+N | 2.16 mg/L | 0.68 mg/L |
| 2021-2022 | Al | 0.77 mg/L | 0.75 mg/L |
| 2021-2022 | O&G | 16.2 mg/L[4] | 15.0 mg/L |
| 2021-2022 | Zn | 0.40 mg/L | 0.26 mg/L |

---

[4] There were two instantaneous NAL exceedances in 2021-2022 in addition to the annual NAL exceedance.

Notice of Violation and Intent to File Suit
July 7, 2025
Page 14

In response to ongoing exceedances of NALs and NELs, Weber Metals identified and purportedly installed the following additional BMPs:

1. Catch Basin Improvements
   - Increased catch basin cleaning to monthly during the rainy season (October–April).
   - Installed new catch basin inserts with filter media at CB-24 through CB-27, CB-29, and CB-30.
   - Replaced existing filter media in other catch basin inserts with media specifically designed to reduce zinc and other target pollutants.
2. Up-Flo Filter System Maintenance
   - Instituted annual replacement of filter media in UFF 2 and UFF 3 treatment systems, subject to manufacturer recommendations.
3. Roof Coating Program
   - Launched a multi-year project to coat or paint 20,000 square feet of galvanized building roofs per year to reduce zinc leaching.
4. "Quadrant" Power Washing Program
   - Began power washing one-quarter of the facility each calendar quarter to remove fine pollutants such as metal shavings and oils.
5. Forklift Tire Replacement Program
   - Investigated alternative forklift tires with lower zinc content and committed to phasing them in as existing tires wear out.
6. Source Control Relocation
   - Relocated the temporary saw from an uncovered area near Gate #1 to a permanent covered structure south of Building W, within the UFF 3 drainage area.

Weber Metals has failed to implement BAT/BCT at the Facility because the Facility continues to discharge storm water containing pollutants in concentrations that exceed NALs and NELs. The exceedances are ongoing, despite the implementation of the UFF treatment system, which is evidence of the inadequacy of the UFF system, a failure to properly maintain it, and/or a failure to properly control the sources of the pollutants at the Facility. Weber Metals recorded at least 15 NAL & NEL exceedances across most parameters after the BMPs identified above were apparently fully implemented.

Each day that Weber Metals has failed to develop and implement BAT and BCT at the Facility in violation of the General Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a). Weber Metals has been in violation of the BAT and BCT requirements at its Facility every day since at least July 7, 2020.

### 5. Weber Metals Has Failed to Comply with the Monitoring Requirements of the General Permit.

The General Permit requires dischargers to implement a Monitoring Implementation Plan. General Permit, Section X.I. As part of their monitoring plan, dischargers must identify all storm water discharge locations. Permit, Section X.I.2. Dischargers must then conduct

Notice of Violation and Intent to File Suit
July 7, 2025
Page 15

monthly visual observations of each drainage area, as well as visual observations during discharge sampling events. General Permit, Section XI.A.1 and 2.

Dischargers must collect and analyze storm water samples from two (2) storm events within the first half of each reporting year (July 1 to December 31) and two (2) storm events during the second half of each reporting year (January 1 to June 30). General Permit, Section XI.B. Section XI.B requires dischargers to sample and analyze during the wet season for basic parameters such as pH, total suspended solids ("TSS") and oil and grease ("O&G"), certain industry-specific parameters set forth in Table 2 of the General Permit, and other pollutants likely to be in the storm water discharged from the facility based on the pollutant source assessment. General Permit, Section XI.B.6. Dischargers must submit all sampling and analytical results via SMARTS within thirty (30) days of obtaining all results for each sampling event. General Permit, Section XI.B.11.

Weber Metals has failed to develop and implement an adequate Monitoring Implementation Plan for its Facility, and has thus violated the monitoring requirements of the General Permit. Weber Metals has failed to collect the required number of samples for each reporting period, and has failed to have each of those samples analyzed for all required parameters. For example, Weber Metals failed to have their storm water samples analyzed for copper since at least July 1, 2022 until the present; and, Weber Metals failed to collect the required number of samples from the following discharge points during the specified reporting years:

| Reporting Year | Discharge Point | Number of Samples Collected in 1st Half of Reporting Period | Number of Samples Collected in 2nd Half of Reporting Period |
|---|---|---|---|
| 2020-2021 | UFF 1 | 0 | 2 |
| 2020-2021 | UFF 2 | 0 | 2 |
| 2020-2021 | UFF 3 | 0 | 2 |
| 2020-2021 | UFF 4 | 0 | 2 |
| 2021-2022 | UFF 1 | 2 | 0 |
| 2021-2022 | UFF 2 | 2 | 0 |
| 2021-2022 | UFF 3 | 2 | 0 |
| 2021-2022 | UFF 4 | 2 | 0 |
| 2022-2023 | UFF 1 | 0 | 2 |
| 2022-2023 | UFF 2 | 0 | 2 |
| 2022-2023 | UFF 3 | 0 | 2 |
| 2022-2023 | UFF 4 | 0 | 2 |
| 2023-2024 | UFF 1 | 0 | 2 |
| 2023-2024 | UFF 2 | 0 | 2 |
| 2023-2024 | UFF 3 | 0 | 2 |
| 2023-2024 | UFF 4 | 0 | 2 |
| 2024-2025 | UFF 1 | 0 | 2 |
| 2024-2025 | UFF 2 | 0 | 2 |

Notice of Violation and Intent to File Suit
July 7, 2025
Page 16

| 2024-2025 | UFF 3 | 0 | 2 |
| 2024-2025 | UFF 4 | 0 | 2 |

Each day that Weber Metals has failed to develop and implement an adequate Monitoring Implementation Plan is a separate and distinct violation of the Act and Permit. Weber Metals has been in violation of the Monitoring requirements every day since at least July 7, 2020.

### 6. Weber Metals Has Failed to Develop and Implement an Adequate Storm Water Pollution Prevention Plan.

The General Permit requires dischargers to develop and implement a site-specific SWPPP. General Permit, Section X.A. The SWPPP must include, among other elements: (1) the facility name and contact information; (2) a site map; (3) a list of industrial materials; (4) a description of potential pollution sources; (5) an assessment of potential pollutant sources; (6) minimum BMPs; (7) advanced BMPs, if applicable; (8) a monitoring implementation plan; (9) annual comprehensive facility compliance evaluation; and, (10) the date that the SWPPP was initially prepared and the date of each SWPPP amendment, if applicable. *See id.*

Dischargers must revise their SWPPP whenever necessary and certify and submit via the Regional Board's Storm Water Multiple Application and Report Tracking System ("SMARTS") their SWPPP within 30 days whenever the SWPPP contains significant revisions(s); and, certify and submit via SMARTS for any non-significant revisions not more than once every three (3) months in the reporting year. General Permit, Section X.B.

LA Waterkeeper's investigation indicates that Weber Metals has been operating with an inadequately developed and implemented SWPPP in violation of General Permit requirements. Weber Metals has failed to evaluate the effectiveness of its BMPs and to revise its SWPPP as necessary, has failed to develop and implement an adequate site map, and has failed to describe and evaluate the industrial materials and potential pollutant sources at the Facility, all of which have resulted in the Facility's numerous continuing effluent limitation violations.

Each day Weber Metals failed to develop and implement an adequate SWPPP at its Facility is a violation of the General Permit. The SWPPP violations described above were at all times in violation of Section X of the General Permit. Weber Metals has been in violation of these requirements at its Facility every day since at least July 7, 2020.

### 7. Weber Metals Has Failed to Submit Timely, True and Correct Reports.

Section XVI of the Permit requires dischargers to submit an Annual Report by July 15th of each reporting year to the Regional Board. The Annual Report must be signed and certified by a discharger's Legally Responsible Person, or Duly Authorized Representative. General Permit, Sections XVI.A, XXI.K. The Annual Report must include a compliance checklist, certifying compliance with the General Permit and an explanation of any non-compliance. General Permit, Section XVI.B.

Notice of Violation and Intent to File Suit
July 7, 2025
Page 17

The General Permit also requires dischargers who exceed NELs and NALs to comply with Water Quality Based Corrective Action, Section XX.B, and Exceedance Response Actions, Section XII, respectively.

LA Waterkeeper's investigations indicate that Weber Metals has failed to submit all required reports pursuant to Sections XX.B and XII in response to their numerous exceedances of both NELs and NALs.  Further, Weber Metals's ERA reports are inadequate as evidenced by the continued exceedances, even after apparently full implementation of the BMPs described therein. Each day Weber Metals failed to submit timely, true and correct reports is a separate violation of the Clean Water Act.  Weber Metals has been in violation of these requirements at its Facility every day since at least July 7, 2020.

## III.    Persons Responsible for the Violations.

LA Waterkeeper puts Weber Metals on notice that they are the persons and entities responsible for the violations described above.  If additional persons are subsequently identified as also being responsible for the violations set forth above, LA Waterkeeper puts Weber Metals on formal notice that it intends to include those persons in this action.

## IV.    Name and Address of Noticing Parties.

The name, address and telephone number of each of the noticing parties is as follows:

Bruce Reznik, Executive Director
Los Angeles Waterkeeper
360 E 2nd Street Suite 250
Los Angeles, CA 90012
(310) 394-6162

## V.    Counsel.

LA Waterkeeper has retained legal counsel to represent it in this matter.  Please direct all communications to:

William N. Carlon
Law Office of William Carlon
437 Post Street
Napa, CA 94559
(530) 5144115
william@carlonlaw.com

## VI.    Conclusion

Notice of Violation and Intent to File Suit
July 7, 2025
Page 18

       LA Waterkeeper believes this Notice of Violations and Intent to File Suit sufficiently states grounds for filing suit.  We intend to file a citizen suit under Section 505(a) of the CWA against Weber Metals and their agents for the above-referenced violations upon the expiration of the 60-day notice period.  If you wish to pursue remedies in the absence of litigation, we suggest that you initiate those discussions within the next 20 days so that they may be completed before the end of the 60-day notice period.  We do not intend to delay the filing of a complaint in federal court if discussions are continuing when that period ends.

Sincerely,

William N. Carlon
Law Office of William Carlon
Counsel for LOS ANGELES
WATERKEEPER

Notice of Violation and Intent to File Suit
July 7, 2025
Page 19

## SERVICE LIST

## VIA CERTIFIED MAIL

Lee Zeldin, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Josh F.W. Cook, Regional Administrator
U.S. Environmental Protection Agency, Region IX
75 Hawthorne Street
San Francisco, CA 94105

Pamela Bondi, U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

Eric Oppenheimer, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812

Susana Arredondo, Executive Officer
Los Angeles Regional Water Quality Control Board
320 W 4th Street, #200
Los Angeles, CA 90013

**ATTACHMENT A**
**Notice of Intent to File Suit, Weber Metals**
**Significant Rain Events,\* July 7, 2020 – July 7, 2025**

| | | |
|---|---|---|
| January 17, 2020 | January 9, 2023 | March 29, 2024 |
| February 9, 2020 | January 10, 2023 | March 30, 2024 |
| March 12, 2020 | January 14, 2023 | March 31, 2024 |
| March 13, 2020 | January 15, 2023 | April 5, 2024 |
| March 16, 2020 | January 16, 2023 | April 13, 2024 |
| March 22, 2020 | January 29, 2023 | April 14, 2024 |
| April 5, 2020 | January 30, 2023 | January 26, 2025 |
| April 6, 2020 | February 23, 2023 | January 27, 2025 |
| April 7, 2020 | February 24, 2023 | February 5, 2025 |
| April 9, 2020 | February 25, 2023 | February 6, 2025 |
| April 10, 2020 | February 28, 2023 | February 7, 2025 |
| December 28, 2020 | March 1, 2023 | February 12, 2025 |
| January 23, 2021 | March 10, 2023 | February 13, 2025 |
| January 25, 2021 | March 11, 2023 | March 5, 2025 |
| January 28, 2021 | March 14, 2023 | March 6, 2025 |
| January 29, 2021 | March 15, 2023 | March 13, 2025 |
| March 3, 2021 | March 21, 2023 | April 26, 2025 |
| March 10, 2021 | March 29, 2023 | |
| March 11, 2021 | March 30, 2023 | |
| March 15, 2021 | May 4, 2023 | |
| October 23, 2021 | August 20, 2023 | |
| October 25, 2021 | August 21, 2023 | |
| December 14, 2021 | November 15, 2023 | |
| December 23, 2021 | December 20, 2023 | |
| December 24, 2021 | December 21, 2023 | |
| December 25, 2021 | December 22, 2023 | |
| December 29, 2021 | December 30, 2023 | |
| December 30, 2021 | January 3, 2024 | |
| March 19, 2022 | January 20, 2024 | |
| March 28, 2022 | January 22, 2024 | |
| April 22, 2022 | February 1, 2024 | |
| June 22, 2022 | February 4, 2024 | |
| September 9, 2022 | February 5, 2024 | |
| November 8, 2022 | February 6, 2024 | |
| December 11, 2022 | February 7, 2024 | |
| December 12, 2022 | February 19, 2024 | |
| December 27, 2022 | February 20, 2024 | |
| December 31, 2022 | February 21, 2024 | |
| January 3, 2023 | March 2, 2024 | |
| January 4, 2023 | March 6, 2024 | |
| January 5, 2023 | March 23, 2024 | |

\* Significant Rain Events are days where the 24-hour rainfall total was at least 0.1 inches according to publicly available rain and weather data collected at a station located near the Facility.