**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

LOS ANGELES WATERKEEPER, *a California non-profit association*,

Plaintiff,

v.

WEBER METALS, INC., *a California corporation*,

Defendant.

Case No.: 2:26-cv-05311-MWC-ASx

**ORDER ENTERING CONSENT DECREE AND DISMISSING CLAIMS WITH PREJUDICE JS-6 (DKT. [17])**

Before the Court is the parties' Notice of Completed Agency Review and Request to Enter Proposed Consent Decree. Dkt. # 17. The parties represent there are no objections to their proposed consent decree. *Id.* at 2. Plaintiff requests the Court dismiss its claims with prejudice, except to the extent the Court needs to interpret, modify, or enforce the proposed consent decree. *Id.* The parties agree that entry of this Consent Decree "shall constitute a final judgment between the Plaintiff and Defendant." *Id.* at 42. Upon review of the parties' request, the Court **ORDERS** that Plaintiff's claims are **DISMISSED WITH PREJUDICE**. The Court **ENTERS** the following Consent Decree and **CLOSES** this case; however, the Court retains jurisdiction to interpret, modify, and/or enforce the following Consent Decree:

**CONSENT DECREE**

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Defendant Weber Metals, Inc. ("Defendant") owns and operates a facility at 16706 Garfield Avenue, Paramount, California, under Waste Discharger Identification number 4 19I000406 ("Facility");

**WHEREAS**, the Facility's industrial activities consist of precision metal forging and forging support operations (heat treating, etching, sawing, cutting, and grinding of aluminum and titanium parts), designated outdoor storage of raw aluminum alloys and finished goods, limited vehicle and equipment maintenance, and loading and receiving. The Facility is categorized under Standard Industrial Classification ("SIC") Code 3463, covering (Nonferrous Forgings);

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System

("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facility ("General Permit" or "Permit")[1], and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, it is alleged that Defendant's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan ("SWPPP") and a storm water monitoring implementation plan ("MIP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable or best conventional pollutant control technology to prevent or reduce pollutants through the development and application of Best Management Practices, which must be detailed in and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards consistent with General Permit requirements, and (4) implement a monitoring and reporting program, including the MIP, designed to assess compliance with the Permit;

---

[1] Any references to the "General Permit" or "Permit" herein shall be to the then-effective and legally binding version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

**WHEREAS**, on July 7, 2025, Plaintiff issued a notice of intent to file suit ("60-Day Notice Letter") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of the Los Angeles Regional Water Quality Control Board ("Regional Board"), the Regional Administrator of EPA Region IX, and the U.S. Attorney General of the U.S. Department of Justice, alleging violations of the Clean Water Act and the General Permit;

**WHEREAS**, on May 18, 2026, LA Waterkeeper filed a complaint against Defendant in the Central District of California ("Court"), Civil Case No. 2:26-cv-05311-MWC-ASx ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendant's discharges of pollutants into storm drains and surface waters, including the Los Angeles River and the Pacific Ocean (collectively, "Receiving Waters");

**WHEREAS**, Defendant denies any and all legal and factual allegations in the 60-Day Notice Letter and Complaint relating to the Facility;

**WHEREAS**, Plaintiff and Defendant (collectively, "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules and regulations.

**NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION, THE RECEIPT AND SUFFICIENCY OF WHICH IS HEREBY ACKNOWLEDGED, IT IS HEREBY STIPULATED BETWEEN**

**THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2. Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3. The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4. LA Waterkeeper has standing to bring this action.

5. The Court shall retain jurisdiction over this matter for the purposes of interpreting, modifying, or enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, for the Term (as defined below) of this Consent Decree including for as long as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term.

## I. OBJECTIVES

6. It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7. In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, applicable terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II. AGENCY REVIEW AND DEFINITIONS

### A. Agency Review of Consent Decree

8. Agency Review. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States EPA (the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9. Court Notice. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10. Entry of Consent Decree. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

**B. DEFINITIONS**

11. Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

a. "Advanced Treatment System" means the UFF System and/or other storm water treatment system that includes each of the following processes: 1) pre-settling; 2) polymer- or electronically assisted coagulation (i.e., particle flocculation); and (3) sand or other media filtration (e.g., perlite, activated carbon) or ion exchange.

b. "BAT" means the Best Available Technology Economically Achievable.

c. "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

d. "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

e. "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

f. "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

g. "Design Storm" means the design storm calculated in accordance with the design storm standards set forth in General Permit for Volume-based BMPs (General Permit § X.H.6.a.) or Flow-based BMPs (General Permit § X.H.6.b.).

h. "Discharge Point" means each discharge location designated in the then-current SWPPP for the Facility.

i. "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

j. "Entry Date" means the day this Consent Decree is approved and entered by the Court.

k. "Forecasted Rain Event" means a forecasted rain event with a 50% or greater chance of precipitation over 0.1 inches as determined by

the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "Paramount, CA."[2]

l. "MIP" means a Monitoring Implementation Plan.

m. "NAL" means Numeric Action Level.

n. "NEL" means Numeric Effluent Limitation.

o. "PPT" means Pollution Prevention Team.

p. "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

q. "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

r. "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

s. "SMARTS" means the California State Water Resources Control Board's Storm Water Multiple Application and Report Tracking System.

t. "SWPPP" means a Storm Water Pollution Prevention Plan.

u. "Term" means the period between the Effective Date and the "Termination Date."

v. "Termination Date" means the latest of:

i. Three (3) years from the Effective Date hereof;

ii. Seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to Termination as defined in Paragraph v.i if resolution extends beyond Termination;

---

[2] Available at https://forecast.weather.gov/MapClick.php?lat=33.8841&lon=-118.169&unit=0&lg=english&FcstType=graphical.

iii. Seven (7) days from Defendant's completion of all payments and other affirmative duties required by this Consent Decree if any are pending at the time of Termination as defined in Paragraph v.i; or

iv. Seven (7) days after Defendant confirms, in writing to LA Waterkeeper, compliance with all "No Exposure Certification" ("NEC") requirements of the General Permit and the Regional Board has not objected to or rejected Defendant's NEC within ninety (90) days of submission.

w. "Wet Season" means the period beginning October 1st of any given calendar year and ending June 30th of the following calendar year.

## III. COMMITMENTS OF THE SETTLING PARTIES

### A. Storm Water Pollution Control Best Management Practices

12. Current and Additional Best Management Practices. Defendant shall implement BMPs identified in its SWPPP and BMPs described herein and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree, the General Permit, and the Clean Water Act.

13. Non-Storm Water Discharge Prohibition. Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

14. Rain Gauge/Sensor. Defendant shall install and maintain an electronic rain gauge or sensor at the Facility within thirty (30) days of the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Defendant shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree, except in the event of equipment malfunctions caused

by something outside of Defendant's control. In the event of a rain gauge malfunction, Defendant shall use rain data from National Oceanic and Atmospheric Administration ("NOAA") (http://forecast.weather.gov/) for "Paramount, CA" (see fn. 2, *supra*) for purposes of precipitation quantities and timing. Notwithstanding the foregoing, rain gauge/sensor data (or NOAA data used in its place) shall not be conclusive as to whether a discharge of storm water associated with industrial activities has occurred or as to when any such discharge may have commenced, for the purposes of determining Defendant's compliance with the General Permit or this Consent Decree.

15. Non-Structural BMPs for the Facility. As soon as possible but no later than forty-five (45) days after the Effective Date, unless otherwise noted, Defendant shall develop and implement the following non-structural BMPs at the Facility:

a. Sweeping. Implement a sweeping program using a regenerative air or vacuum sweeper equipped with an enclosed vacuum system with the capacity to collect and retain PM-10 (10 µm) particles, including an Advance SW8000 LP,  a substantially similar equivalent, or a sweeper certified by the South Coast Air Quality Management District, on all paved areas daily on business days, and employ hand sweeping and/or backpack style HEPA vacuuming on the same schedule in areas a mechanical sweeper cannot access (and in particular, areas adjacent to catch basin inlets, along building perimeters, and in material storage areas);

b. Store Industrial Materials Under Cover. Where practicable, store industrial materials under permanent or temporary roofs or Storm Resistant Shelters, as defined by General Permit Section XVII.B.5.

c. Cover Outdoor Bins. Ensure that all outdoor bins and containers holding aluminum saw fines, metal dust collection residuals, other fine industrial particulates, and/or hazardous waste , but not including bins or containers holding trash or other non-hazardous

waste, are outfitted with integrated covers that are kept closed at all times when not in use;

d. Remove Abandoned Materials. Remove and prevent the storage of, all unused, inutile, and/or abandoned racks, vehicles, equipment, paint and waste scrap materials from the outdoor industrial areas of the entire property, except as necessary prior to disposal;

e. Roof Cleaning. Conduct pressure washing of roof surfaces monthly during the Wet Season, and ensure that all pressure washing water wastewater is collected and properly disposed off-site; and;

f. Maintenance. Implement an equipment and vehicle maintenance program that ensures:

i. No maintenance activities occur outdoors during wet weather, unless such maintenance is required for the safe operation of the Facility, *e.g.*, the forklift breaks down in a location that prevents ingress/egress;

ii. Maintenance activities occur only in designated work areas or beneath covered maintenance areas; and

iii. When maintenance activities must be performed outdoors, Defendant shall immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground.

g. Confirm BMPs. Pursuant to the reporting requirements specified in Paragraph 32, Defendant shall confirm to LA Waterkeeper in writing and with photographs, that each of the above BMPs has been implemented as set forth above.

16. Wet Season BMPs.

a. Pre-Rain Protocol. Within twenty-four (24) hours prior to a Forecasted Rain Event, Defendant shall:

i. Remove any exposed waste material that may interface with storm water.

ii. Where practicable, move all industrial materials, scrap bins, trash cans, and hazardous waste bins to a storm-resistant shelter or otherwise cover them with tarps, lids, or other coverings sufficient to prevent exposure to rainfall.

iii. Ensure all drains are free of clogs and operating as intended.

iv. Conduct sweeping required pursuant to Paragraph 15(a).

17. Structural BMPs at the Facility. Defendant shall develop and implement the following structural BMPs at the Facility:

a. *Filtration System Upgrades.*

i. Upgrades to Up-Flo Filter ("UFF") systems ("UFF Systems"): As soon as reasonably practicable, but no later than December 30, 2026, Defendant shall install additional filter media canisters at units UFF-2, UFF-3, and UFF-4 to increase media contact time and maximize dissolved zinc removal capacity subject to UFF Systems limitations.

ii. Media Specification: Prior to the installation of additional filter media canisters, Defendant shall utilize a media formulation effective at reducing zinc in all existing and new canisters. If the current media is not specifically effective at reducing zinc, Defendant shall replace all existing canisters with the upgraded zinc-reducing media concurrently with the expansion subject to UFF Systems limitations and market availability issues.

iii. Media Replacement: Defendant shall replace filter media canisters on an annual basis.

iv. Operation and Maintenance Report Concerning UFF Systems: As soon as reasonably practicable, but no later than December 30, 2026, Defendant shall prepare an Operation and Maintenance Report ("O&M Report") that assesses the condition and operation of the UFF Systems and includes recommended maintenance and repair measures to improve the performance of the UFF Systems. Defendant shall submit a copy of the O&M report to Plaintiff for review and comment. Plaintiff shall have thirty (30) days to provide any comments and/or concur with the recommendations of the O&M Report. If Plaintiff disagrees with any conclusions in the O&M Report and timely provides its feedback, the Parties shall meet to agree on the scope of improvement measures. If the Parties cannot agree within thirty (30) days, any disputes shall be governed in accordance with Section IV of this Agreement. If Plaintiff does not respond within thirty (30 days) from receipt of the O&M Report, Plaintiff's concurrence shall be presumed. Subject to any meeting or dispute resolution processes that may be invoked, Weber shall implement the recommended improvement measures as soon as reasonably practicable.

b. *Roof Coating*: Defendant shall prioritize Buildings A and B in the Facility's ongoing roof coating program, and in any case, shall complete the coating on Buildings A and B by no later than October 15, 2026.

c. *Oil and Grease*: To address oil and grease accumulation and mobilization in storm water discharges within the UFF-2 drainage

area, Defendant shall implement the following source control measures:

i. Investigation: Within 60 days of the Effective Date, Defendant shall conduct a targeted investigation to identify the specific origin of elevated oil and grease loading in the UFF-2 drainage area ("O&G Investigation").

ii. BMP Implementation: Within 60 days of the Effective Date, pursuant to the reporting requirements specified in Paragraph 32, Defendant shall report the results of the O&G Investigation to Plaintiff and propose corrective BMPs to address any identified sources of oil and grease. Defendant shall include a proposed implementation schedule for proposed BMPs, with a final completion date no later than 180 days after the Effective Date. LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's report of the O&G Investigation to provide Defendant with comments. Within thirty (30) days of receiving LA Waterkeeper's comments, Defendant shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated into the corrective BMPs. Defendant shall promptly implement all proposed and accepted BMPs from the O&G Investigation. LA Waterkeeper may elect not to provide comments, in which case the proposed BMPs shall be deemed accepted.

iii. Dispute Resolution: Any disputes as to the adequacy of a corrective BMP identified from the O&G Investigation shall be resolved pursuant to the dispute resolution provisions of

this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP identified from the O&G Investigation.

d. *Pavement Repairs*: Continue to implement a program to patch, pave, or otherwise resurface areas of degraded pavement or asphalt throughout the Facility.

e. Pursuant to the reporting requirements specified in Paragraph 32, Defendant shall confirm to LA Waterkeeper in writing and with photographs, that each of the Structural BMPs in this Paragraph has been implemented as set forth above.

**B. SAMPLING AT THE FACILITY**

18. During the Term, Defendant shall collect samples of storm water discharge from each Discharge Point from at least four (4) Qualifying Storm Events, including the first two (2) Qualifying Storm Events during the first half of the Reporting Year and the first two (2) Qualifying Storm Events during the second half of the Reporting Year consistent with the General Permit.

19. Timing. During each Qualified Storm Event where samples of storm water discharges are collected, Defendant shall collect samples as soon as possible within the four (4) hour period required by the General Permit § XI.B.5.

20. Sampling Parameters. All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Should Defendant intend to conduct sampling for any additional parameter(s) for any reason, such parameter(s) shall be incorporated into this Consent Decree as if listed in Table 1 for all purposes, including any Action Plan requirements (as defined below). Defendant shall immediately notify LA Waterkeeper of its intent to conduct sampling for any such additional parameters, and the Parties shall meet and confer regarding the applicable

Table 1 limit for such purposes within fourteen (14) business days of such notification. The Table 1 limit shall not exceed applicable regulatory action levels for storm water.

21. Laboratory and Holding Time. Except for pH samples, Defendant shall deliver all samples to a California-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a portable instrument that is calibrated and used according to the manufacturer's instructions.

22. Detection Limit. Defendant shall request that the laboratory use analytical methods adequate to detect the individual pollutants at or below the values specified in the General Permit and Table 1 below.

23. Documentation of Inability to Sample. If, during a storm event that Defendant would be required to sample in the event of discharge from the Facility, Defendant is unable to collect a storm water sample from any Discharge Point because insufficient discharge occurs, Defendant shall document the inability to sample at such Discharge point(s) by taking photographs during that observation time at each Discharge Point. Defendant shall maintain those photographs along with the rain gauge sensor data and provide the photographs to LA Waterkeeper pursuant to the reporting requirements in Paragraph 32 below.

24. Reporting. Defendant shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit, and shall provide copies to LA Waterkeeper within seven (7) days of receiving the laboratory report with the results.

## C. REDUCTION OF POLLUTANTS IN DISCHARGES

25. Table 1 Numeric Limits. Defendant shall develop and implement BMPs for storm water discharges from the Facility that are designed to reduce pollutant concentrations to levels below those in Table 1.

**TABLE 1**[3]

| Parameter | Numeric Limit | Source of Limit |
|---|---|---|
| Total Suspended Solids (TSS) | 400 mg/L (instantaneous); 100 mg/L (annual) | NAL |
| Oil & Grease (O&G) | 25 mg/L (instantaneous); 15 mg/L (annual) | NAL |
| pH | 6.5-8.5 SU (instantaneous) | Basin Plan |
| Zn | 0.159 mg/L | NEL |
| Al | 0.75 mg/L | NAL |
| N+N | 0.68 mg/L | NAL |
| Fe | 1.0 mg/L | NAL |

26. Exceedances. An "Exceedance" of Table 1 is defined as follows: (a) with respect to an instantaneous maximum NAL, where analytical results for two or more storm water samples for the same parameter collected from the Facility during the same Reporting Year exceed the applicable instantaneous maximum value set forth in Table 1; (b) with respect to an annual average NAL, where the average of all analytical results for the applicable parameter from samples collected from the Facility during the same Reporting Year exceeds the annual average value set forth in Table 1; or (c) with respect to an NEL, where analytical results from two or more storm water samples for the same parameter collected from the same Discharge Point during the same Reporting Year exceed the applicable NEL value set forth in Table 1, in each case consistent with Section I.N.76 or V.C.1 of the General Permit. An Exceedance shall constitute a Trigger Event per this Consent Decree and warrant action as defined below.

a. Single Sample Exceedance. A "Single Sample Exceedance" shall be defined as one (1) storm water sample for any parameter which

---

[3] The numeric limits listed in Table 1 are for reference only, and the Table 1 limit applicable to each parameter shall be the then-effective limit provided by the applicable source, e.g., if the NAL for TSS is either increased to 110 mg/L or decreased to 90 mg/L, such new NAL, and not 100 mg/L, shall be used as the Table 1 limit for the purposes of this Consent Decree as if set forth herein. If the source of a limit in Table 1 is revised to no longer provide a limit for a given parameter, e.g., the NAL for TSS being removed, then the Parties shall meet and confer regarding the applicable Table 1 limit for such parameter for the purposes of this Consent Decree.

exceeds the concentration limit for the applicable annual NAL, instantaneous NAL, or NEL set forth in Table 1, but such result does not, on its own, satisfy the definition of an "Exceedance" under Paragraph 26. A Single Sample Exceedance shall not constitute a Trigger Event. Instead, within thirty (30) days of Plaintiff's receipt of notice of the Single Sample Exceedance, Plaintiff may request a meeting to discuss whether any further action is necessary in light of the Single Sample Exceedance. If the Parties cannot agree on a specific action plan to be carried out, Plaintiff shall have thirty (30) days from the date of their meeting to invoke the dispute resolution provisions in Article IV. If the dispute resolution provisions are not invoked, no action shall be required.

27. Action Plan. As of the Effective Date, and for the remainder of the Term, if (a) Defendant has an unauthorized non-storm water discharge in violation of Paragraph 13, or (b) Defendant receives a lab report for storm water sample results that demonstrates an Exceedance as defined above, or (c) the advanced treatment system at any of the Facility's Discharge Points discharges untreated storm water generated at the Facility in smaller than a Design Storm (each, a "Trigger Event"), Defendant shall prepare and submit to LA Waterkeeper a plan to address the conditions causing the Trigger Event ("Action Plan"); provided, however, an Action Plan shall not be required when the BMPs to address the Trigger Event were addressed in a previous Action Plan in the same Reporting Year and such BMPs were not yet fully implemented as of the date of the sampling that led to the Trigger Event. The Action Plan shall be submitted to LA Waterkeeper within forty-five (45) days of the applicable Trigger Event; provided, however, that where good cause exists, Defendant shall request, and Plaintiff shall not unreasonably withhold approval, for additional time to complete the Action Plan.

a. Requirements. Each complete Action Plan shall include at a minimum: (1) the identification of the Trigger Event(s) underlying the Action Plan, including pollutant(s) discharged in excess of the numeric limit(s), the discharge of untreated stormwater from an advanced treatment system at any of the Facility's Discharge Points in smaller than a Design Storm, and/or the applicable unauthorized non-storm water discharge; (2) an assessment of the cause of each Trigger Event; (3) the identification of additional or improved BMPs that shall be implemented to achieve compliance with the numeric limit(s), the Design Storm requirement, and/or unauthorized non-storm water discharge prohibition, as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties or not reasonably practicable. Within seven (7) business days of each of the BMPs set forth in the Action Plan being implemented, Defendant shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth in the Action Plan.

b. Proposed BMPs. The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

i. Evaluation of Existing BMPs. Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed.

ii. Sweeping. The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

iii. Hydrologic Controls. Installation of additional berms or structural controls necessary to prevent storm water from flowing off site other than through the specified storm water control and discharge methods.

iv. Treatment Systems. Installing additional components or systems, or otherwise improving, the advanced stormwater treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

c. Action Plan Review. LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete Action Plan to provide Defendant with comments. Within thirty (30) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d. SWPPP Updates. Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan, pursuant to Paragraph 31(b) below.

e. Action Plan Payments. Defendant shall pay Five Thousand Dollars ($5,000.00) each time an Action Plan is submitted to LA Waterkeeper. Payments are due at the same time that the applicable Action Plan is submitted and shall be made to "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E. 2nd Street, Suite 250, Los Angeles, CA 90012. Failure to submit a payment as required under this Paragraph will constitute a breach of the Consent Decree.

**D. VISUAL OBSERVATIONS**

28. Storm Water Discharge Observations. During the Term, Defendant shall conduct visual observations during the Facility's operating hours during every substantial rain event reasonably likely to result in discharge. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit.

29. Monthly Visual Observations. During the Term, Defendant shall conduct monthly visual observations of the Facility including outfalls, outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit. Defendant shall inspect all Discharge Points for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facility. Defendant shall further inspect the Facility to ensure no discharges of non-storm water are occurring from the Facility. For any inspections during the Wet Season, Defendant shall include observations of all storm water BMPs that are used only during the Wet Season at the Facility to ensure that operational BMPs are being implemented, structural BMPs are in good condition or working order, and that BMPs have been effective in achieving clean conditions at the Facility.

30. Visual Observations Records. For all visual observations conducted pursuant to Paragraphs 28 and 29 above, Defendant shall maintain visual observation records, including photographs, containing the name(s) of the person(s) who completed the inspection, the date of the inspection, and notes sufficient to describe all observations, including: (i) whether BMPs are in a proper, working condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; (iii) other conditions that have the potential to contribute to pollutant loading in storm water discharges; (iv) whether any discharges of non-storm water are occurring; and (v) photographs of all the foregoing.

**E. TRAINING AND PLANS**

31. SWPPP Revisions.

a. Initial SWPPP Revisions. Defendant shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper within forty-five (45) days of the Effective Date for LA Waterkeeper's review and comment. The complete, updated SWPPP shall contain, at a minimum, the following elements:

i. A revised, as necessary, pollutant source assessment, including all elements required by Section X.G of the General Permit as well as assessments of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

ii. A detailed narrative description and assessment of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by Section X.G of the General Permit;

iii. Descriptions of all BMPs in accordance with Section X.H.4 of the General Permit, including, without limitation, BMPs required by this Consent Decree;

iv. A set of site maps that comply with Section X.E of the General Permit and provisions of this Consent Decree, including accurately depicting the different drainage areas and flows;

v. A MIP as required by Sections XI and X.I of the General Permit;

vi. A designation (by position/title) of employees responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation ("Designated Employees"); and

vii. An employee training program that includes the following:

1. A detailed Training Manual or Standard Operating Procedure for use by Defendant's Designated Employees;
2. Training and training materials provided in the language(s) in which Designated Employees are fluent;
3. Training provided by a QISP and repeated as necessary to ensure that all Designated Employees are familiar with the requirements of this Consent Decree, the Permit, and the Facility's SWPPP, including by training relevant new staff before assuming responsibilities for implementing the SWPPP;
4. Training for a sufficient number of Designated Employees to properly collect and store storm water samples and submit such samples to a certified laboratory;

5. Training for all Designated Employees on how and when to properly conduct visual observations;
6. Training for all Designated Employees on the General Permit's prohibition of non-storm water discharges, including how to identify, detect, and prevent such discharges; and
7. Maintenance of training records documenting compliance with this Paragraph.

b. Additional SWPPP Revisions.

i. Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

ii. Within thirty (30) days after any changes in industrial activities or sources of industrial pollutants, changes to Discharge Points, changes to BMPs, changes to facility contacts or Designated Employees, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision, Defendant shall revise the then-current SWPPP to reflect such changes and submit the updated and complete SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment. Defendant shall identify to LA Waterkeeper the section(s) of the SWPPP that were revised pursuant to this Paragraph.

c. Review of SWPPP. LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete SWPPP to provide

Defendant with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendant shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendant shall upload the revised SWPPP to SMARTS.

### F. Compliance Monitoring and Reporting

32. Reporting Requirements. On July 31st and January 31st during the Term, except as otherwise stated below, Defendant shall send a written report to LA Waterkeeper ("Compliance Report") that documents:

a. In the next Compliance Report after new BMPs are first implemented, all such BMPs implemented pursuant to this Consent Decree, with representative photographs, demonstrating that each BMP has been implemented and is being properly maintained as set forth above in Paragraphs 15 and 17.

b. A list of all precipitation events observed by the rain gauge or sensor installed pursuant to Paragraph 14 after the last Compliance Report provided to LA Waterkeeper, including the amount of precipitation observed, and an explanation of Defendant's ability or inability to sample each Qualifying Storm Event during operating hours;

c. The complete laboratory results of all stormwater samples received by the Facility after the last Compliance Report provided to LA

Waterkeeper, including the date each set of results was uploaded to SMARTS and the identification of any results that exceed the numeric limits set forth in Table 1.

33. LA Waterkeeper may conduct one annual site inspection ("Site Inspection") during each Reporting Year during Term for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendant's compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding an additional Site Inspection at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours. Plaintiff will provide Defendant with at least twenty-four (24) hours' notice (and will make best efforts to give 48 hours' notice) for inspections during anticipated wet weather and at least seven (7) days' notice for dry weather inspections. The 24-hour notice must include at least one business day to allow for coordination with the QISP and the site. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 62. During the wet weather inspection, if Defendant has not sampled all required QSEs consistent with this Consent Decree, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial Discharge Point(s) referenced in its SWPPP, to the extent that such discharges are occurring; provided, however, that Plaintiff shall provide Defendant sufficient notice for Defendant to prepare for sample collection. Defendant shall collect the sample and, if requested by Plaintiff, provide a split sample to LA Waterkeeper at Plaintiff's cost. Plaintiff's representative(s) may observe the split sample(s) being collected by Defendant's representative. Plaintiff

shall be permitted to take photographs or video recording during any Site Inspection, solely for purposes of documenting compliance with this Consent Decree and the General Permit, and only of areas reasonably related to storm water compliance. All such activities shall occur while accompanied by Defendant's representative and in a manner that does not unreasonably interfere with operations or violate applicable safety or security requirements. Plaintiff shall not photograph or record confidential, proprietary, or trade secret information, and Defendant may designate such areas at the time of inspection. Employees shall not be photographed or recorded. Prior to any site inspection, the Parties shall enter into a site inspection agreement consistent with safety and liability terms set forth in the Parties' Site Inspection Agreement, dated December 17, 2005. Plaintiff shall be permitted to use any evidence from such an inspection in connection with an action to enforce this Agreement, and Defendant reserves all rights to seek a protective order or similar protective measures.

34. Document Provision. During the Term, Defendant shall notify and/or submit documents to LA Waterkeeper as follows:

a. Defendant shall copy LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 62, on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality unless otherwise available in SMARTS or protected by legal privilege or confidentiality.

b. Within five (5) business days of receipt by Defendant, Defendant shall send to LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 62, any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at

the Facility received by Defendant from the Regional Board, the State Board, and/or any state or local agency, county, or municipality unless protected by legal privilege or confidentiality .

c. Defendant shall provide the following documents to LA Waterkeeper within five (5) calendar days of receiving a written request from LA Waterkeeper:

i. Rain gauge data collected pursuant to Paragraph 14.

ii. Documentation of an inability to collect storm water samples from any Discharge Point pursuant to Paragraph 23.

iii. Visual observation records maintained pursuant to Paragraph 30.

iv. Employee training records and manuals documenting compliance with Paragraph 31(a)(vi).

35. Compliance Monitoring. Defendant shall partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree during the Term by paying Fifteen Thousand Dollars ($15,000.00) within thirty (30) days of the Entry Date. Payments pursuant to this Paragraph shall be made via check, made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E 2nd Street, Suite 250, Los Angeles, CA 90012. Defendant shall include the Facility's name and WDID along with the payment for ease of identification. Defendant's failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

### G. ENVIRONMENTALLY BENEFICIAL PROJECT, LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST

36. Environmentally Beneficial Project. To fund environmentally beneficial project activities that will reduce or mitigate the impacts of storm water pollution from

industrial activities occurring in the Los Angeles River watershed, Defendant shall make a payment totaling Forty-Five Thousand Dollars ($45,000.00) to the Friends of the LA River made within thirty (30) days of the Entry Date, payable to Friends of the LA River and sent via overnight mail to Friends of the LA River, 570 W. Ave 26 #250, Los Angeles, CA 90065. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

37. LA Waterkeeper's Fees and Costs. Defendant shall pay a total of Eighty Thousand Dollars ($80,000.00) to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within thirty (30) days of the Entry Date. The payment shall be made payable to: Law Office of William Carlon and delivered by overnight carrier to 437 Post Street, Napa, CA 94559. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

38. Missed Deadlines. In the event that Defendant fails to submit to LA Waterkeeper any payment, document, report, or communication required by this Consent Decree, LA Waterkeeper shall provide written notice to Defendant of such missed deadline. Defendant shall have seven (7) calendar days from receipt of such notice to cure such delinquency. If Defendant fails to cure such delinquency within seven (7) calendar days of receipt of LA Waterkeeper's notice, then Defendant shall pay a stipulated payment of Five Hundred Fifty Dollars ($500) per day. Such stipulated payments shall be made by check payable to: Friends of the LA River, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 36. Payment shall be sent via overnight mail to Friends of the LA River, 570 W. Ave 26 #250, Los Angeles, CA 90065. Defendant shall make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

39. Interest on Late Payments. Defendant shall pay interest on any payments, fees, or costs owed pursuant to this Consent Decree that are not received by the due date. The interest shall accrue starting the next business day after the payment is due and shall be computed at a rate equal to the lower of: (i) 10% per year (0.833% per month); or (ii) the maximum rate permitted by applicable law. Interest shall continue to accrue daily on any outstanding balance until Defendant is current on all payments then due under this Consent Decree, and shall be paid at the same time that the payments, fees, or costs owed are paid to LA Waterkeeper. Interest on late payments shall be paid by check payable to: Friends of the LA River, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 36. Payment shall be sent via overnight mail to Friends of the LA River, 570 W. Ave 26 #250, Los Angeles, CA 90065.

## IV. DISPUTE RESOLUTION

40. Meet and Confer. Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the meet and confer.

41. Settlement Conference. If the Parties cannot resolve the dispute within thirty (30) days from the date of the meet and confer described in Paragraph 40, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

42. In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d),

and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V. MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

43. Plaintiff's Waiver and Release of Defendant. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, releases Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, regional chapters or other divisions, affiliates, successors or assigns, agents, attorneys and other representatives ("Defendant Released Parties"), from and waives all claims and demands of any kind, nature, or description whatsoever, and from any and all liabilities, damages, injuries, actions, or causes of action, either at law or in equity, known or unknown, which it may have arising from the matters addressed by this Consent Decree and the claims that were raised, or could have been raised, in the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree, including without limitation, all claims for injunctive relief, damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts and others), costs, expenses, losses, or any other sum incurred or claimed. Nothing in this Consent Decree shall be construed to release, waive, or limit any claim, right, or cause of action arising from acts, omissions, or violations occurring after the Termination Date, all of which are expressly reserved. Nothing in this Paragraph shall be construed to affect Plaintiff's right to enforce this Consent Decree, which is expressly permitted by this Consent Decree.

44. Defendant's Waiver and Release of Plaintiff. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers and directors, releases Plaintiff, its officers, directors, managers, employees, members, parents, subsidiaries, regional chapters or other divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims and demands of any kind, nature, or description whatsoever,

and from any and all liabilities, damages, injuries, actions, or causes of action, either at law or in equity known or unknown, which it may have arising from the matters addressed by this Consent Decree and the claims that were raised, or could have been raised, in the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree, including without limitation, all claims for injunctive relief, damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts and others), costs, expenses, losses, or any other sum incurred or claimed. Nothing in this Consent Decree shall be construed to release, waive, or limit any claim, right, or cause of action arising from acts, omissions, or violations occurring after the Termination Date, all of which are expressly reserved. Nothing in this Paragraph shall be construed to affect Defendant's right to enforce this Consent Decree, which is expressly permitted by this Consent Decree.

45. Release and Waiver of Rights Under California Civil Code Section 1542. Solely with respect to the claims expressly released in Paragraphs 43 and 44 of this Consent Decree (the "Released Claims"), the Parties (including their assigns, agents, employees, attorneys, and anyone who claims or may claim by and/or through any of the foregoing and/or in their stead) hereby expressly waive and relinquish any rights and benefits conferred by California Civil Code Section 1542 and any law of the United States or of any state or territory of the United States or of any other equivalent to Section 1542 of the California Civil Code, and does so understanding and acknowledging the significance and consequence of the specific waiver of such a provision, which reads as follows:

> Section 1542. A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Parties acknowledge and understand that they might later discover facts in addition to or different from those which they now know or believe to be true with respect to the Released Claims, but that it is their intention to fully, finally, and forever settle and release the Released Claims, whether known or unknown, existing as of the Effective Date. The releases in this Consent Decree shall be construed in accordance with, and limited to, their express terms. Notwithstanding the foregoing, nothing in this Consent Decree releases, waives, or limits any claim arising from fraud, misrepresentation, or concealment in the negotiation, execution, or performance of this Consent Decree.

46. No Other Claims. Plaintiff and its counsel represent and warrant that Plaintiff and its counsel do not have any other charges, lawsuits, or claims of any kind against the Defendant Released Parties. Plaintiff and its counsel further represent and warrant that they are not aware of any individuals who have contacted or retained Plaintiff or its counsel to discuss, contemplate, or commence litigation or any other proceedings against Defendant Released Parties, or who have expressed interest in commencing litigation or any other proceedings against the Defendant Released Parties. Plaintiff and its counsel represent and warrant that they have not assigned any claims they previously had against the Defendant Released Parties. Plaintiff and its counsel represent and warrant that they have no present intention to solicit third parties or governmental agencies to bring claims against the Defendant Released Parties.

47. Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date unless otherwise released by this Agreement.

## VI. MISCELLANEOUS PROVISIONS

48. No Admission of Liability. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

49. Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Electronic transfers of original or digital signature shall be deemed to be originally executed counterparts of this Consent Decree.

50. Authority. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the Party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

51. Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree. For the avoidance of doubt, Defendant may satisfy its obligations herein through use of qualified contractors and other agents.

52. Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

53. Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

54. Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected to the extent that such provision does not undermine the general basis of the Agreement. In the event that a Party believes the basis for the Agreement has been undermined by a finding of unenforceability, the Parties shall confer in good faith to attempt to renegotiate the affected provision(s) in a manner that preserves, to the greatest extent possible, the original intent and purpose of the Consent Decree. If the Parties are unable to reach agreement within 30 days, any Party may seek appropriate relief from the Court. The Parties' reserve their rights to argue for the preservation or rescission of this Consent Decree. If the Consent Decree is deemed unenforceable or rescinded as a whole by the Court, each and every provision of this Consent Decree shall be deemed null and void as if it never existed and nothing herein shall be referenced in any legal action between the Parties.

55. Choice of Law. The laws of the United States shall govern this Consent Decree.

56. Diligence. Defendant shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

57. Effect of Consent Decree. Compliance with this Consent Decree does not, in and of itself, mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

58. Negotiated Settlement. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

59. Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a

written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

60. Assignment. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

61. Force Majeure. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

62. Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

If to Plaintiff:
Los Angeles Waterkeeper
Benjamin Harris
Erina Kwon
Alexandra Ballesteros
360 E 2nd St., Suite 250
Los Angeles, CA 90012
Email: ben@lawaterkeeper.org
Email: erina@lawaterkeeper.org
Email: alex@lawaterkeeper.org
Phone: (310) 394-6162

With copies to:
Law Office of William Carlon
William Carlon
437 Post Street
Napa, CA 94559
Email: william@carlonlaw.com
Phone: (530) 514-4115

If to Defendant:
Weber Metals, Inc.
Paul Dennis
Queen Uchekwe
16706 Garfield Avenue
Paramount, CA 90723
PaulDennis@webermetals.com
QueenUchekwe@webermetals.com
Phone: (888) 831-6918

With copies to:
Greenberg Glusker LLP
Noah Perch-Ahern
Sedina L. Banks
2049 Century Park East, Suite 2600
Los Angeles, CA 90067
nperchahern@greenbergglusker.com
sbanks@greenbergglusker.com
Phone: (310) 201-7484

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

63. If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152; in such event, the Parties shall retain the right to assert all rights and defenses to any claims related to the Complaint.

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendant.

**IT IS SO ORDERED.**

DATED: October 28, 2026

Hon. Michelle Williams Court
United States District Judge